# Brooke's Appeal.

1. The Orphans' Court has jurisdiction over the surety of a guardian, to compel the surrender by him of property belonging to the minor's estate deposited in his hands by the guardian.

2. Where such surety recovered property for the minor's estate under an express stipulation, in which the guardian joined, that the property should remain in his hands until the minor came of age; and the surety afterwards, during the ward's minority, removed from the state taking the property with him, but appeared in answer to a petition filed by the guardian, *Held*, that the Orphans' Court properly decreed a surrender by the surety of said property to the guardian, or to the depositary of the court.

January 17th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county :* Of July Term 1882, No. 168.

This was an appeal by Charles W. Brooke, from a decree of said court, directing him to deliver up certain securities to the guardian of the minors to whose estate said securities belonged. The case was heard on petition and answer.

The petition of Ann Stack, formerly Ann Tobin, filed March 25th 1882, set forth substantially as follows: On January 5th 1866, the petitioner, then Ann Tobin, widow of Walter Tobin, deceased, was appointed by the Orphans' Court

guardian of her two minor children, Mary and Johanna Tobin, and the court directed security to be entered in the sum of $800. Her then counsel, Charles W. Brooke, Esq., became her surety on her bond for said amount. The petitioner alleged that Mr. Brooke induced her to place in his hands for safe keeping the corpus of the estate of said minors, consisting of four United States 7–30 bonds of $100 each, for which he gave her the following receipts:

PHILADELPHIA, January 20th 1866.

Received of Mrs. Ann Tobin for deposit for account of minors in Tobin estate two 7–30 United States bonds for $100 each, being part of bonds purchased with moneys paid in settlement of cause of Tobin v. Coastwise Steamship Company.

CHARLES W. BROOKE.

Received of Mrs. Ann Tobin for deposit for account of minors in Tobin estate two 7–30 United States bonds for $100 each, being the remainder of the bonds purchased with moneys paid in settlement of cause of Tobin v. Steamship Company.

CHARLES W. BROOKE.

That Mr. Brooke paid the petitioner interest upon said bonds to July 1880, but has since paid nothing, and has refused, on demand, to return said bonds or their proceeds with interest. That Mr. Brooke some years ago removed permanently to the city of New York, where he now resides; that petitioner believes he owns no real estate in this county, and is advised that being a non resident has no right to retain said property. The petitioner prayed for a citation, and that the defendant be required to surrender said bonds or their proceeds, and to pay interest due thereon.

A citation issued as prayed for. Mr. Brooke appeared, without service, and filed an answer, wherein he averred that in January 1865 he was retained as attorney for the petitioner, then widow of Walter Tobin, deceased, and for his heirs, to prosecute a claim against the Coastwise Steamship Company for negligently causing the death of said Walter Tobin ; that after the commencement of an action a settlement thereof was had upon the following conditions : " The said petitioner having been appointed guardian of the minor children, heirs of said decedent, your respondent becoming the security for such guardian ; and the said defendant's attorney (Charles E. Lex, Esq.) having by agreement in writing, executed by said petitioner, exacted a covenant that the amount of the shares of said children agreed upon by the parties to said settlement should be retained in the possession of this respondent until such minor children should arrive at the age of maturity, that thereupon the sum of four hundred dollars ($400) was paid in accordance with said agreement to this respondent, who duly receipted

to the petitioner as guardian therefor ; that the reason for such agreement was in the interest of said minor children, the said petitioner being a very illiterate and inexperienced person, and liable to again marry and have other interests and affections besides those existing at the time of the settlement of said action ; that this respondent reluctantly consented at the time to be the custodian of said moneys, and the allegation in the petition herein that this respondent ' induced ' said petitioner to place the corpus of the estate of said minors (consisting of four hundred dollars as aforesaid) in his hands for safe keeping is wholly false and untrue, but having done so, continued semi-annually to pay the said petitioner the interest upon said moneys, taking her receipt therefor ; that in the month of May 1871, this respondent removed to the city of New York, but from that time for ten years regularly paid, through his mother, residing in the city of Philadelphia, not only the interest semi-annually as theretofore, but as the receipts of said petitioner show a sum in excess thereof ; that if, as claimed by petitioner, any portion of such interest is unpaid, it is undoubtedly owing to the fact that respondent's mother having about a year since changed the location of her residence in said city, which the petitioner had taken no pains to ascertain the whereabouts of. This respondent upon claim being made for such interest sent to the attorney for the petitioner to ascertain the amount asserted to be remaining due and unpaid, and being informed thereof sent the same to the office of said attorney by messenger ; but said attorney had left the city and could not be found, nor could any person be found to receive the same ; that he is now and has ever been ready and willing to pay any such sum as may be due, but believes and asserts that such interest has in reality been fully paid up to the present time.     The respondent further saith, that none of the children of said de-cedent for whose benefit said moneys are held in trust have arrived at the age of maturity, but are still minors ; that one of them, a daughter, is married, and that efforts have hereto-fore been made to obtain the principal of said sum for the use of her husband ; that the petitioner has, since the decease of said Walter Tobin, remarried, and has other interests and affec-tions apart from said minor children ; that the respondent is desirous of guarding and protecting the interests of said minor children, and of protecting his own interest in view of the security he has entered herein ; that the said petitioner is in his judgment and belief by reason of the circumstances herein above set forth, not a judicious or proper custodian for such moneys : that your respondent has in all things faithfully and honestly administered the trust thrust upon him.     And he

[Brooke's Appeal.]

therefore prays that the proceeding may be dismissed, and the prayer of the petitioner herein be denied."

After argument, on the petition and answer, the court (HANNA, P. J.) filed the following opinion and decree:—We do not think there can be any doubt as to the jurisdiction of the court to grant this petition. By the Act of June 16th 1836, Purdon 1104, it is declared that the jurisdiction of the Orphans' Court shall extend to "the appointment, control, removal, and discharge of the guardians of minors and the settlement of their accounts," and "all cases within their respective counties, wherein executors, administrators, guardians, or trustees, may be possessed of, or are in any way accountable for, any real or personal estate of a decedent."

It would indeed be a narrow construction of the Act to hold that the authority of the court is limited to the control of executors, etc., individually, and the disposition of the estates committed to them, while as respects their sureties, or other parties obtaining possession of the money, or other assets, which should properly be in the custody of the fiduciaries mentioned, or interfering with them in the management of either the real or personal estate, to the prejudice of those interested, it is powerless. Such could not have been the intention of the legislature. The prior Act of March 29th 1832, Ibid. 1106, prescribes the practice in proceedings against persons amenable to the jurisdiction of the courts, and the form of process to enforce its decree. And further provides, in any case where proof shall be made that the defendant in the petition has in his possession trust property or effects, which he is wasting or otherwise disposing of, contrary to his duty or trust, or that he is about to abscond and carry such trust property or effects out of the jurisdiction of the court, "it shall be lawful for the court to award a writ to the sheriff to take possession of such trust property, and hold the same subject to the order of the court." It will thus appear that the most ample powers and authority are conferred upon the court to protect the estates of decedents and minors, and retain the same within its own control. And further, as if declaratory of its jurisdiction as a court of equity within the limits of the powers theretofore conferred, the Act of 1874, Purdon 1934, pl. 7, was passed, whereby it has "power to prevent, by orders in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which they shall have jurisdiction."

Here we have the case of a surety, who received from his principal, a guardian, moneys of minors invested in United States loans, which he has not only removed from this jurisdiction, but claims to retain until they severally attain lawful age. If he had continued to reside in this city, or upon his removal

deposited the certificates of loan in some safe place of deposit, in all probability the present application would never have been made; but being now a non-resident, and not possessing any property or estate within this jurisdiction, it is not surprising that the guardian should seek to have the small estate of her children returned to her, or placed within the control of the court. And this we think should be done. A guardian is but a trustee, and where he deposits with, or surrenders to, another the trust property, either as his surety or a stranger to the trust, such third person becomes a constructive trustee, and the trust property may be followed in like manner as other trust property, by a court of equity, into whosoever's hands it may be, with notice of the trust. Particularly will this be the case where the trust estate is about to be removed, or has been removed, out of the jurisdiction. And not only will such constructive trustee be held accountable therefor, but compelled to return and redeliver the trust property to the legal trustee: Story's Equity §§ 1257, 1266; Perry on Trusts, §§ 217, 241, 245; Abbott's Executors *v*. Reeves, 13 Wright 494; Act of 1874, supra; Mussleman's Appeal, 15 P. F. Smith 480; and Bell's Appeal, 21 Ibid. 465 are instances of the jurisdiction of the Orphans' Court against third persons dealing with property belonging to estates of decedents. As early as 2 Ashmead 448, In re Petition of Getts, a guardian had absented himself from the state and appointed an agent to manage the ward's estate. Judge KING held that the Orphans' Court had power to compel the agent to file and settle an account; that the novelty of the application furnished no reason for its refusal; and under the circumstances, to prevent a failure of justice, he granted a citation. And in Hopkins' Estate, 11 Phil. Rep. 45, we held, following Musselman's Appeal, supra, " that persons are amenable to the jurisdiction of this court, either because they are parties having an interest in the subject-matter of a proceeding in it, or because they are under official obligation to it, or because they are sureties or parties to bonds or recognizances."

We therefore think it clear that we have undoubted authority to interfere in behalf of the petitioner. While the defendant may with good reason doubt the propriety of delivering the investments to the guardian, yet he has no authority to remove or detain the same out of the jurisdiction. He will be protected against personal liability by the guardian being required to enter additional security. Purdon 453, pl. 234.

We therefore order and direct the defendant to forthwith surrender and deliver to the petitioner, the four bonds of the seven-thirty loan of the United States, for one hundred dollars each, being the estate of the minors received by him from peti-

tioner, together with all interest collected since the last payment of interest to the petitioner. And in case said loan has been called in and paid off, then to pay to the petitioner the sum of four hundred dollars, the principal thereof, with interest thereon, as stated ; additional security therefor to be first entered by petitioner in the sum of six hundred dollars, to be approved by the court. Should such security be not entered, the defendant is directed to surrender and deliver said loan, or pay the principal thereof, with interest, into the depository of the court, subject to its further order.

The respondent thereupon took this appeal, assigning for error the above decree.

*George W. Harkins*, for the appellant.—The fund was recovered by the appellant upon the compromise and settlement of a claim, one of the terms of such settlement being a covenant under seal that the appellant, who was security for the guardian, who was illiterate and irresponsible, should retain the fund until the minors arrived of age, which period has not yet arrived. The petitioner was a party to said settlement and covenant. The guardian has married again, and the appellant is not justified in surrendering the estate to her, contrary to the covenant which he entered into with the parties from whom the money was derived, and with the petitioner. There is no pretence of misappropriation by the surety, or of his insolvency or that the estate is in danger. The appellant, although now residing in New York, has appeared without service, but this will not give jurisdiction to the Orphans' Court to decree payment of money by a surety, who stands in no direct relation to the court, where no facts are shown requiring the interposition of a court of equity to prevent impending loss to the minor's estate. If the decree is enforced, the lawful condition on which the respondent accepted his trust, and became surety for the guardian, the status of which remains unchanged, is violated, while the respondent remains liable on his bond, and the very danger arises which it was the intention of the covenant to guard against, and for which the surety never agreed to become responsible.

*J. W. M. Cardeza*, for the appellee.

The opinion of the court was delivered January 29th 1883.

PER CURIAM.—We discover no error in this decree. The appellant had removed from the state taking the property of the minor children with him. He had not paid any interest to them

[City Iron Works *v.* Barber.]

for more than a year and a half. His claim to possession of the property, under the facts, could not be maintained against the lawful demand of the guardian of the children. It is the duty of the Orphans' Court to watch over their property and to protect their rights therein.  It was therefore within a just exercise of its powers to make an order that the property be paid over to the guardian on due security being given, and if that should not be entered, then to pay the money into the depository of the court subject to its further order.

Decree affirmed and appeal dismissed at the costs of the appellant.