# APPEAL OF THE ODD FELLOWS SAVINGS BANK.

[ESTATE OF JAMES MARSHALL, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF ALLEGHENY COUNTY.

Argued October 31, 1888—Decided January 7, 1889.

1. While the authority of the Orphans' Court to determine disputed questions of title may well be doubted, yet it is very certain that it has jurisdiction and control over assets which admittedly belong to the estates of decedents.

2. The Orphans' Court, under § 7, act of May 19, 1874, P. L. 206, which

Statement of Facts.

was but declaratory of the law prior to its passage, has power to restrain the sale and transfer of assets of a decedent's estate by any one having possession thereof.

3. Having such power, its jurisdiction is sufficient to enable it to order that property of a decedent's estate admittedly in the hands of one not an executor, administrator, guardian or trustee, shall be surrendered for administration.

4. A case once within the grasp of a court of equity, or of a court lawfully exercising equity powers, it has no need to call in the aid of a court of law: its process is plastic and its power limited only by the necessities of the case and by its duty to administer equity in accordance with established rules.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 215 October Term 1888, Sup. Ct.; court below, No. 222 June Term 1888, O. C.

On June 9, 1888, Anna Frances Marshall, one of the children and heirs at law of James Marshall, deceased, filed a petition setting forth the facts sufficiently shown in the decision of the court below, whereon a citation was awarded upon Thomas M. Marshall, M. W. Watson and Matilda Marshall, executors and trustees under the will of James Marshall, deceased, the Odd Fellows Savings Bank of Pittsburgh, the Allegheny Gas Company, James Marshall, Jr., and Geo. I. Whitney, assignee of James Marshall, Jr., praying, in substance: (1) that said executors and trustees be required to commence proper legal proceedings for the recovery of certain shares of the capital stock of the said gas company, in possession of said bank as collateral security, together with the dividends thereon, and that said bank and gas company be restrained from transferring said shares; (2) that in case the court should decline to grant such decree, that said stock, with said dividends, be adjudged to be the property of the estate of James Marshall, deceased, and that said bank and said gas company account therefor, etc.

To this petition Thomas M. Marshall, James Marshall, Jr., and George I. Whitney, assignee, made no answer. The Allegheny Gas Company, M. W. Watson and Matilda Marshall answered, substantially admitting the averments of the petition, and submitting themselves to such decree as the court

Decision of Court below.

should deem proper. The Odd Fellows S. Bank demurred, and for cause showed:

"That the subject matter of said petition, so far as it relates to demurrant, is not within the jurisdiction of the Orphans' Court." [1]

After argument, the court, HAWKINS, P. J., on September 20, 1888, filed the following decision and decree:

STATEMENT:

The petitioner alleges, inter alia, that James Marshall died in 1869, leaving a will in which he appointed Thomas M. Marshall, Mark W. Watson and James Marshall, Jr., executors, and Matilda Marshall, executrix; that on December 19, 1882, James Marshall, Jr., then acting executor, since discharged, assigned 133 shares of the capital stock of the Allegheny Gas Company to the respondent, the Odd Fellows Savings Bank, as additional security, in continuation of a previously existing individual debt; that said respondent knew said stock was the property of said estate, and was being used for the individual purpose of said James Marshall, Jr., and not for the purpose of said estate; that since said assignment large dividends have been declared thereon; that said respondent claims to hold said stock under said assignment, and the Allegheny Gas Company refuses to recognize the ownership of the estate therein; and that, although said stocks and dividends are required in the administration of the said estate, the surviving executors have neglected and refused to institute proceedings for the recovery thereof.

The petitioner averring that she is beneficially interested, therefore asks, in the alternative, either—

1. That said executors be directed to institute proceedings for the recovery of said stocks and dividends; or,

2. That said the Odd Fellows Savings Bank be ordered by this court to re-assign said stocks, with the accrued dividends, to the estate.

The executors do not deny these allegations; the Allegheny Gas Company submits itself to the action of this court, and the Odd Fellows Savings Bank demurs to the jurisdiction, and asks that a final decree be made on petition and demurrer.

Decision of Court below.

OPINION :

The pleadings in this matter raise questions of jurisdiction alone in respect of the alternative prayers. In the view which this court takes, that question only will be discussed which relates to its jurisdiction to compel the respondent, the Odd Fellows Savings Bank, to re-transfer the stock which James Marshall, Jr., fraudulently assigned while acting executor under the will of James Marshall, deceased. This court has such jurisdiction and should exercise it, and for these reasons:

1. It is immaterial, so far as the Odd Fellows Savings Bank is concerned, whether or not petitioner has an interest vested under the will, or contingent upon the action of the executors; for she alleges, and the executors do not deny, her beneficial interest.

2. The executors admit that they have neglected and refused to institute proceedings for the recovery of this stock, and that this stock is required in the administration of the estate. No reason is given for the failure to institute such proceedings. The default of the executors in this behalf surely makes this petitioner a party interested to quicken their action. It is not essential that she should attack the financial status of respondents, as a basis of relief. The due administration of the trust is a vital matter to her, and is sufficient. The executors are the officers of this court, and her trustees; and here is the only forum in which she can lay any complaint of, and correct their default. The 57th section of the act of March 29, 1832, P. L. 208, provides that the jurisdiction of this court may be invoked by "petition of any one interested, whether such interest be immediate or remote, setting forth facts necessary to give the court jurisdiction, the specific cause of complaint, and the relief desired;" and "this is followed by all the means of enforcing the decree of the court possessed by courts of law and equity:" Mussleman's App., 65 Pa. 480, 489. The rule in chancery is that creditors may bring suit where their trustee refuses: Story's Eq. Pl., 516. But, even were this view doubtful, the position taken by the executors in this matter removes any difficulty in respect of a competent party complainant. They substantially ask to intervene.

The amenability of respondent depends upon the existence of jurisdiction in this court over the subject matter in controversy.

3. It will be conceded that this court has exclusive jurisdiction of the settlement of the estates of decedents; that within the orbit of its jurisdiction it has all the powers of a court of chancery, and that its jurisdiction must be maintained. The relation of these principles to the question involved is obvious. Possession of the assets of decedents is essential to the exercise of this jurisdiction. The whole machinery of the court contemplates and would be useless without it. Administration implies it. For this reason the Supreme Court, in Leiper v. Levis, 15 S. & R. 108, held such assets exempt from execution, and in Mickle v. Miles, 1 Gr. 320, from distress. When once in possession of this court, the assets of decedents are in the grasp of the law, and a well recognized rule forbids interference without leave: Kerr on Receivers, 165. Interference without such leave is, in courts of chancery, punishable as a contempt, and the power to enforce restoration follows as an incident. The power of this court in respect of the assets of decedents is the same, and its jurisdiction must be maintained. It is immaterial through how many hands or transmutations these assets may have passed, if in fraud of the trust; so long as they can be identified they may be followed. Identification gives jurisdiction of the thing, and jurisdiction of the person who happens to be in possession necessarily follows; for the former would be useless without the latter. Those into whose hands assets may pass in fraud of the trust become thereby trustees ex maleficio, subject to the same rules and remedies as other trustees: Perry on Trusts, 245; and, consequently, to the jurisdiction of this court as a court of equity: Brooke's App., 102 Pa. 150. The act of May 19, 1874, P. L. 207, was simply declarative of an existing remedy. If this court had the powers of a court of chancery, its power to maintain its jurisdiction by appropriate process follows as a logical deduction.

The possession of the assets of decedents by this court must necessarily be by executors, administrators and other trustees, who are its officers, just as the possession of courts of chancery is by its receivers and other officers: Beach on Receivers, § 239; and that possession is a trust which must be administered in the mode prescribed by law.

It will be seen from the foregoing, that there are competent

parties and a subject matter in this proceeding within the jurisdiction. The Odd Fellows Savings Bank having wilfully interfered with this court's possession of the assets mentioned in the petition, in violation of the trust under which they were held, must, in accordance with the principles stated in this opinion, make restoration. This is the direct and appropriate remedy, and avoids the additional expense and delay involved in the alternative prayer.

And now to wit, September 20, 1888, this cause came on to be heard, on the petition and the answers of M. W. Watson and Matilda Marshall, executors and trustees, and the Allegheny Gas Co., and also upon the demurrer of the Odd Fellows Savings Bank; and thereupon, after argument of counsel, it is ordered, adjudged and decreed:

1. That the said petition be taken pro confesso as to Thomas M. Marshall, M. W. Watson and Matilda Marshall, executors and trustees under the will of James Marshall, deceased, and as to the Allegheny Gas Co., and they are hereby made parties petitioning.

2. That the 133 shares of the capital stock in the Allegheny Gas Co., referred to in the petition in this case, are the property, and part of the assets of the estate of James Marshall, deceased.[2]

3. That the said Allegheny Gas Co. shall fully recognize the said executors and trustees under the will of James Marshall, deceased, as the owners of said 133 shares of stock in the capital of the said Allegheny Gas Co., and that the said Allegheny Gas Co. shall account for and pay over to the said executors and trustees, all dividends on said 133 shares of stock not heretofore paid to said executors and trustees.[3]

4. That the demurrer of the Odd Fellows Savings Bank be overruled, and that the said Odd Fellows Savings Bank shall forthwith re-assign and deliver up to said Thomas M. Marshall, M. W. Watson and Matilda Marshall, executors and trustees as aforesaid, certificate No. 693 for 126 shares, and certificate No. 760 for 7 shares of the capital stock of the Allegheny Gas Co. now held by it—said certificates being the same mentioned in the petition filed in this case—and fully account for, and pay over, to said executors all dividends on said stock received by it. And further, that the said Odd Fellows Savings Bank

has no right nor title thereto, and that it pay the costs of this proceeding.[4]

The said decree having been entered, the Odd Fellows S. Bank took this appeal, assigning as error:

1. The overruling of the demurrer.[1]

2-4. The parts of the decree indicated.[2 to 4]

*Mr. Marshall Brown,* for the appellant:

1. Can the bank's title to the stock be attacked and settled in the Orphans' Court? If it have a lien thereon, or an equitable title thereto, as against the executors, the estate, or the legatees under the will, is there any statutory authority vesting in the Orphans' Court the power to settle and determine questions affecting such title or lien? If the estate were in possession of stock claimed by the bank, could the bank proceed in that court by petition to recover the same? If the bank refused to surrender possession of land, alleged to be the property of the estate, could it be ousted by that court at the instance of a legatee? If the executors had loaned the bank money for purposes other than for the benefit of the estate, would it be a trustee ex maleficio and amenable to the Orphans' Court, at the instance of the executors or of legatees?

2. The jurisdiction of the Orphans' Court is purely statutory: Snyder's App., 36 Pa. 166; Delbert's App., 83 Pa. 468; Fretz's App., 4 W. & S. 433. Section 19, act of June 16, 1836, P. L. 792, which is substantially a re-enactment of § 4, act of March 29, 1832, P. L. 190, defines the persons in a trust relation to the jurisdiction of the Orphans' Court, namely: executors, administrators, guardians and trustees, possessed of, or in any way accountable for any real or personal estate of a decedent. Section 57, act of March 29, 1832, P. L. 208, defines the party, to wit, a party in interest—widow, heir, legatee, devisee, etc., who may invoke the aid of the Orphans' Court. But the remedy of a party in interest, within the jurisdiction of that court, is limited solely to proceedings against parties occupying a fiduciary relation thereto, under the act of 1836, and does not extend to third parties in possession of property, to trustees generally, or ex maleficio, nor to executors de son tort: Fretz's App., 4 W. & S. 435; Delbert's App., 83 Pa. 468.

Stress is placed upon Brooke's App., 102 Pa. 150. A careful examination of that case, shows that it is not in conflict with the cases cited.

3. The act of May 19, 1874, P. L. 206, conferring power upon the Orphans' Court to issue injunctions, is simply declaratory of power theretofore vested in that court. Restraining orders may issue at the instance of a party in interest, to protect the property of a decedent's estate in the actual possession of executors, administrators, guardians, etc.; but it was never intended that the injunction orbit of the Orphans' Court should embrace the jurisdiction of the Common Pleas and extend to assets in the possession of a third party, even though claimed by the estate.

*Mr. J. H. White*, for the appellee:

1. Section 19, act of June 16, 1836, P. L. 792; paragraph XIX, XX, XXI, § 53, act of March 29, 1832, P. L. 207; § 7, act of May 19, 1874, P. L. 207, give to the Orphans' Court jurisdiction of decedents' estates, that is of all the property belonging to a decedent's estate. Possession is only an incident, and as said by the court below, " it is immaterial through how many hands or transmutations those assets may have passed, if in fraud of the trust; so long as they can be identified, they may be followed." Since the passage of the acts of 1832 and 1836, the powers of the Orphans' Courts have been greatly augmented, as well by subsequent acts as by the tendency of the decisions. " Its powers, originally small, have by gradual accretion grown into great magnitude and importance: " Shollenberger's App., 21 Pa. 340.

2. The Orphans' Court, as a court of equity with jurisdiction limited to particular subjects, has all the powers necessary to give effect to its jurisdiction within the circuit of its action. In giving general jurisdiction of a particular subject, the legislature impliedly gives every ancillary power necessary to the exercise of it: Barklay's Est., 10 Pa. 390. The power to decide all questions necessary to a proper distribution of the fund follows the power of distribution, and vests in the Orphans' Court as a necessary incident to the distribution: Kittera's Est., 17 Pa. 423; Dundas's App., 73 Pa. 480. Within its appointed orbit, its jurisdiction is exclusive, and therefore

Opinion of the Court.

necessarily as extensive as the demands of justice: Shollen-
berger's App., 21 Pa. 341; McGettrick's App., 98 Pa. 9; Grove's
App., 103 Pa. 562; Hopkins's Est., 11 Phila. 42; Mussleman's
App., 65 Pa. 480; Bell's App., 71 Pa. 465; Daily's App., 87
Pa. 487.   In Brooke's App., 102 Pa. 150, it is held that the
Orphans' Court has jurisdiction over a surety of a guardian,
to compel the surrender by him of property belonging to a
minor's estate deposited in his hands by the guardian.   In all
these cases the person made amenable to the jurisdiction had
no other connection with the trust except that arising out of
his possession of property belonging to the trust.

OPINION, MR. JUSTICE PAXSON:

There is no question raised here as to the title of the one
hundred and thirty-three shares of the capital stock of the Alle-
gheny Gas Company, held by the appellants.   The petition
avers, and the demurrer admits, that said stock belongs to the
estate of James Marshall, deceased; that it was wrongfully
pledged by James Marshall, Jr., one of the executors of said
estate, for his individual debt, and that appellants knew when
the stock was pledged with them that it belonged to the estate of
James Marshall.   This leaves the single question whether the
Orphans' Court had jurisdiction in this proceeding to compel
appellants to deliver up said stock to the parties legally entitled
thereto.

The Orphans' Court has jurisdiction over the estates of dece-
dents.   While its authority to try disputed questions of title
may well be doubted, it is very certain that it has the control
of the assets which admittedly belong to the estate of a dece-
dent.   It was held in Brooke's App., 102 Pa. 150, that the
surety of a guardian who had received certain bonds belonging
to the minor's estate, could be compelled by the Orphans' Court
to deliver them up to the guardian notwithstanding an express
stipulation in which the latter had joined that the bonds should
remain in his hands until the minor arrived at age.   The act
of May 19, 1874, P. L. 206, provides that the Orphans' Court
"shall have power to prevent by order, in the nature of writs
of injunction, acts contrary to law or equity, prejudicial to
property over which they shall have jurisdiction; provided
that security shall be given as is now required by law in cases

of writs of injunction." This act was but declaratory of the law as it stood prior to its passage, and if this were not so, the act in express terms gives the Orphans' Court chancery powers, so far as an injunction is concerned, in regard to property over which it has jurisdiction.

The court had jurisdiction over this property for the reason that it belonged to the estate of James Marshall. It cannot be doubted that under the act of 1874, it had the power to issue a restraining order in the nature of an injunction to prevent the appellants from transferring this stock. This would be the exercise of a chancery power expressly conferred upon the Orphans' Court. This equitable jurisdiction having attached, it was sufficient to embrace every relief necessary for a full disposition of the case: Winton's Appeal, 97 Pa. 385; Mc-Gowin v. Remington, 12 Pa. 63; Souder's Appeal, 57 Pa. 498. When a cause is once within the grasp of a court of equity, or a court lawfully exercising equity powers, it has no need to call in the aid of a court of law. Its process is plastic, and its power is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules. In such case it needs no other court to finish its work.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.

Argued October 31, 1888—Decided January 7, 1889.