## Mulholland's Estate.   Meeker's Appeal.

[Marked to be reported.]

*Guardian and ward—Surcharge—Timber.*

Uncut timber descends to the heirs of an intestate as real estate, and if the guardian of the minor heirs of the intestate cuts and sells the timber, and pays over one third of the proceeds to the intestate's widow, he will be surcharged with the amount thus paid.

*Settlement between guardian and ward—Jurisdiction of O. C.*

A settlement made between a guardian and ward, shortly after the ward comes of age, will not conclude the ward from claiming from the guardian the proceeds of the sale of timber cut upon the ward's lands, and paid under a mistake to the ward's mother, where the ward has not been informed of her rights.

In such a case the orphans' court has jurisdiction to compel the mother by citation either to pay over to the guardian the money which she has illegally received, or to enter security for the payment of it at her own death, to her daughter.

*Costs—Guardian and ward.*

Where a guardian negligently pays over a portion of the principal of

his ward's estate to a person not entitled to receive it, he will be compelled to pay the costs of the proceedings instituted by the ward to surcharge him with the amount thus illegally paid.

Argued April 20, 1893. Appeal, No. 327, Jan. T., 1893, by Martha A. Meeker, formerly Mulholland, from decree of O. C. Centre Co., surcharging John G. Uzzle, guardian. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to audit of guardian's account.

On exceptions to the report of J. C. Meyer, Esq., auditor, the court filed the following opinion, by FURST, P. J. :

" The accountant was appointed guardian of said ward, Aug. 27, 1884. She arrived at age, Feb. 5, 1888. She was married in June, 1886, to Mr. Meeker at the age of nineteen years. [She remained with her mother as a member of her family until her marriage, and in addition to her support her mother supplied her with what money she needed, at one time giving her $100.] [1]

" [On Feb. 13, 1888, Mr. Uzzle, her guardian, and she had a settlement in the presence of Robert J. Haynes and her husband. At this settlement it was agreed that the guardian should claim no compensation for his time and trouble, and that he should not be charged with any interest on the funds in his hands.] [2] The guardian then paid her the balance which would be due her, allowing him credit with the payments he had previously made.

" It is only because of subsequent facts that a dispute has arisen between the ward and her guardian, and this arose through an error of guardian's counsel in filing an account.

" On Feb. 26, 1889, an account was filed by the guardian showing a balance due him of $233.43, which balance arose by a charge of $196.81 commission, without allowing a corresponding credit for interest.

" On the argument of the case Judge Orvis frankly admitted the error was his, and it would have been corrected upon notice, but owing to the fact that a fieri facias was issued to collect said balance, a petition was presented to the court on June 3, 1890, a year and three months after confirmation of the account, praying the court to strike off said confirmation, etc.

The petition alleged, (1) that there was error in the account

in this, that accountant had charged compensation in violation of the agreement referred to, and that this settlement was fraudulently procured for the purpose of taking advantage of the ward. (2) That the guardian failed to account for any interest on the funds in his hands. (3) That said guardian had taken credit with payment of moneys to Caroline Mulholland, widow of R. Mulholland, arising from the sale of timber, whereas the interest only on said funds was payable to said widow.

" The confirmation was stricken off, and the account was referred to an auditor to re-state. The auditor made a report of his findings, which, upon exceptions filed thereto, was recommitted to him for the purpose of taking further testimony. To his second report the guardian has filed exceptions, and these are the subject of consideration.

" The auditor finds a balance against the guardian of $973.93 and decrees that he shall pay the costs of audit, $141.72."

After approving a surcharge of interest, the court continues :

" The auditor, however, has carried the rule of surcharging the guardian to other matters which, properly speaking, were not part of her estate.

" So that our views are understood, it is proper to state that we consider the case as if presented upon a bill of review, which is the only way in which justice can be done to both sides.

" [Shortly after the death of R. Mulholland a cyclone and fire went through the timber, and a large quantity was blown down. The greater part converted into square timber by both the guardians for all the children, was timber that had blown down. Some standing timber was destroyed or injured by fire, and among this destruction of timber there were a few living trees standing. It was this timber the guardians, with the consent of the widow, and with the knowledge and consent of all the children, except one, not this ward, cut and manufactured into square timber, and which was sold by them and the money equally divided, one third to the widow and two thirds to the children.] [3] The guardians charged themselves with the two thirds as part of the estate of the ward, and the widow's part they at once paid over to the widow. This was the condition of the estate when this guardian made the final settlement with his ward on Feb. 13, 1888, after she was of age. The learned auditor has in his account surcharged the guardian

with what would be her share of the money paid to the widow, if the payment were illegal, to wit, $679.72.

" [It is true the guardians did not previously apply to the orphans' court for an order to allow them to convert this timber into money. It is equally true, if they had not acted promptly and converted it into square timber and sold it, that it would within a year thereafter have been an entire loss to the estate, whereas, by their prompt action, about $10,000 went into the hands of the children and their mother. It is equally true this ward knew all about the cutting of timber before she was of age, and also when she was of age on Feb. 13, 1888. She was also aware of the one third having been paid to her mother. There was something said about it that very day. She never objected to this.] [4] And even in her exceptions to the guardian's account she only claims the interest thereon and not the principal. It is apparent this exception did not originate with her. Her complaint was a failure to charge himself with interest. Had that been the only exception to the account as filed, under the facts as presented, the confirmation of the ac-count would not have been opened. [The evidence clearly shows that the widow not only kept the children at her own cost and supplied them also with whatever was required, but that she, of her own means (very likely out of this very money) built a new house on the property at a cost of about two thou-sand dollars, which enures to exceptant and her coheirs.] [5] [It is also a fact, undenied, that this ward, on the 5th day of November, 1888, by deed, sold and conveyed all her interest, real, personal and mixed, to George R. Boak. At that date the money sought to be recovered here against the guardian was in the hands of the widow, and the ward knew it.] [6]

" What is the legal character of timber blown down by storm ? Is it real or personal property, or does it partake of both char-acters, so that the owner may pursue the person who removes it either by an action of trespass de bonis asportatis or by re-plevin ? Can he not elect to treat it as personal property ?

" We admit the owner can treat it still as real estate, but we also think he may elect to treat it as personal property, and re-cover its value against a trespasser in replevin.

" [The orphans' court is also a court possessing chancery powers. When the storm and fire had swept this timber, would

not the court, upon proper petition by the guardians, have authorized them to convert it into money for the benefit of the entire estate? And under all the facts of this case should not the court on Feb. 13, 1888, upon proper petition by the guardian of Martha A. Meeker, with her consent have distributed the money in the guardian's hands, just as the guardian distributed it, two thirds to the ward, and one third to the widow? Surely Martha A. Meeker was then able to consent. She was not only of age, but she also had a husband able to protect her estate.

" There is no doubt that the court would then with her consent have made such a decree.

" The orphans' court can now ratify what it would have previously ordered and authorized. This has been done from the very beginning in the settlement made on Feb. 13, 1888. There was therefore no wrong done to the ward, as to all of the settlement relating to the timber.] [7]

" [The ward got directly and indirectly her full share of the timber, and it would be inequitable to permit her to be twice paid for it, and especially in view of the fact that she on the 5th of November of the same year parted with all her interest in her father's estate.] [8] If however this is not equitable and she desires still to pursue this claim, she can have her remedy against her mother to secure or invest the money, as she may prefer. If the mother is not equitably entitled to this money, Martha is not yet barred from her action to recover it, and as her mother is solvent and living she ought to seek it there rather than violate her own agreement with her guardian and subject him to litigation and expense.

" [There was therefore nothing in the settlement of the timber that resulted in any advantage to the guardian, or of fraud to the ward, and to that extent the settlement of the 13th of February ought not to be disturbed.] [9]

" As at least one half of the litigation before the auditor arose upon this item, it is only fair that the costs should be equally divided between the guardian and the ward."

The court entered the following decree:

" And now, January 12, 1893, [it is ordered, adjudged and decreed in accordance with an opinion this day filed, that the surcharge of six hundred and seventy-nine $\frac{72}{100}$ dollars

($679.72) against John G. Uzzle, guardian of Martha A. Meeker, be stricken from the account filed by the auditor.] [12] It is further adjudged and decreed that there is due from said John G. Uzzle to said Martha A. Meeker, in the settlement of his account as guardian, the sum of two hundred and ninety-four $\frac{21}{100}$ dollars ($294.21), and that one half the costs be paid by said guardian individually, [and that the other half be paid by the guardian out of the estate of Martha A. Meeker, in his hands.] " [13]

*Errors assigned* were (1–9, 12, 13) portions of opinion and decree in brackets, quoting them.

*C. P. Hewes, J. L. Spangler* with him, for appellant.—Settlements between guardian and ward soon after the latter comes of age, and before opportunity exists to become familiar with the condition of the estate, are to be regarded with a jealous eye: Hawkins' Ap., 32 Pa. 263; Marr's Ap., 78 Pa. 66; Lukens' Ap., 7 W & S. 48; Kinter's Ap., 62 Pa. 318; Hickman's Ap., 7 Pa. 464; Stanley's Ap., 8 Pa. 431; Hinley v. Margaritz, 3 Pa. 428; Curtin v. Patten, 11 S. & R. 305; Schrader v. Decker, 9 Pa. 14; Lenhart v. Ream, 74 Pa. 59; Behm v. Molly, 133 Pa. 614.

The timber was real estate: Foreman v. Foreman, 7 Barb. 215; Wells v. Seeley, 47 Hun, 109; Snowhill v. Snowhill, 2 N. J. Eq. 30; March v. Berrier, 6 Ired. Eq. 524; Genet v. Tallmadge, 1 Johns. Ch. 561; Lloyd v. Hart, 2 Pa. 473; Dyer v. Cornell, 4 Pa. 359; Pennell's Ap., 20 Pa. 515; Hay's Ap., 52 Pa. 449; Large's Ap., 54 Pa. 383; Sayer's Ap., 79 Pa. 428; Leidy v. Proctor, 97 Pa. 486; R. R. v. Sanderson, 109 Pa. 591; Johns v. Tiers, 114 Pa. 611.

A guardian may forfeit his right to compensation by his neglect or lack of proper attention to the detail of his trust: Selleck's Ap., 16 W. N. 370; Seguin's Ap., 103 Pa. 139; Norris's Ap., 71 Pa. 106; Simpson's Ap., 18 W. N. 175.

This entire proceeding is the result of the negligence and inefficiency of the appellee, and the costs were incurred in his efforts to avoid payment of money justly due appellant, and she should not be compelled to pay any part of the costs and expenses of the audit.

*C. M. Bower, John H. Orvis* and *Ellis L. Orvis* with him, for appellee.—If a strict account should be taken now between the mother and children, it would show that she had expended, for their benefit, more than she received from the guardians from the proceeds of this timber, and appellant has no just cause to complain, if a portion of it was originally improperly paid to her mother.

Besides this, the widow was entitled to receive the interest on this money during life, and as she is still living, appellant is not now entitled to the principal, and the auditor was clearly wrong in surcharging the guardian with this item, and requiring him to pay it presently to his ward, when, under any circumstances, appellant would not be entitled to it until the death of her mother.

OPINION BY MR. JUSTICE DEAN, May 8, 1893:

Rudolph Mulholland, the father of this ward, the appellant, died August 27, 1883. He left to survive him a widow and five minor children. At his death he was the owner of a considerable estate both in improved and timber lands. On the 27th of August, 1884, John G. Uzzle was appointed guardian of Martha A., this appellant; she was then about sixteen years of age; her estate consisted of some money and the undivided fifth interest in the land of her father, subject, under the intestate laws, to the interest of her mother. The timber land consisted of two tracts, warranted in names of Paul Cox and Ann Stewart, of which the intestate was the sole owner; he was also the owner of an undivided one half interest in another tract known as the Holt and Mulholland tract; on this last tract, Holt, the cotenant of Mulholland, commenced to cut and market the timber soon after the death of Mulholland, and continued operations until the timber was all taken off. During this time, the timber on the Cox and Stewart tracts had been considerably damaged by storm and fire, and it obviously was for the best interests of the estate that it should also be immediately marketed, otherwise the inevitable result to all interested would be loss. So this timber was cut and sold. It is not disputed the guardian received the full value of his ward's share of this timber; he paid over to her mother one third of this share, $679.72, assuming that it belonged to the mother as personalty of her

deceased husband. This was a mistake. Admit the necessity for cutting the timber, which we do not doubt, still it was clearly real estate, and as such descended to the children under the intestate laws. It needs no citation of authority to sustain the auditor's conclusion that it was realty, not personalty. The owner, Rudolph Mulholland, might by a contract in his lifetime have converted it into personalty; or by a will he might have directed its conversion; or the law might have done so for payment of his debts; but here, the moment after his death it descended to his children as real estate. Neither the elements, the courts, nor the act of man, could remove from it the impress given it by the settled law of this commonwealth; it might be turned into money, but for purposes of descent and distribution it remained real estate. The learned judge of the orphans' court asks:

"When the storm and fire had swept this timber, would not the court upon proper petition by the guardians have authorized them to convert it into money for the benefit of the entire estate?"

We answer certainly such action would have been authorized by the law, and would under the evidence here have been entirely proper. But this would have in no way affected the ward's right to the money; her estate in the land, to the extent of the value of the timber, being turned into money, would have continued hers just as before, except in one particular, it would have become productive, and her mother would have been entitled to one third the annual income or the interest of the money. But the guardian paid over to the mother, without security, one third of his ward's share of the money absolutely. At the time it was received and thus paid over, there was not the semblance of authority in the law for such action; the orphan's court could not legally have authorized it. What it could not precedently authorize, it cannot subsequently ratify. It can and has ratified the act of the guardian in selling the timber, under the circumstances. The ward, during minority, was incapable of assenting to the payment to the mother. The settlement with the guardian after she came of age is without significance. To sustain such a settlement with a guardian immediately after coming of age, there must be convincing proof that the ward understood not alone what had been done

with her money, or to whom it had been paid, but what was her right. It should have been explained to her that the guardian had paid illegally to her mother $679.72 of her money; then she could ratify or insist on payment. There is no evidence that at the time of the settlement she comprehended the extent of her rights. She testifies that at the settlement no explanation was made to her; that Robert J. Haynes kept Mr. Uzzle's accounts for him, and made the calculations. Mr. Haynes testifies that he told her the amount of money her mother received, and then says: "I never explained to her that the returns from timber sold was real estate, and that Mrs. Mulholland was not entitled to an absolute one third, because I did not think that was the way. I do not think any of us knew any better."

Apparently, all of them were ignorant of her estate in the purchase money of this timber, and no orphans' court, in the proper determination of the rights of wards in the settlement of their estates, can adopt such a transaction as binding on the ward. To do so would violate every rule of policy which has been laid down for the settlement of accounts between guardians and wards, would be full of peril to the helpless and inexperienced.

We hold, therefore, that the guardian paid this $679.72 to the widow without authority, and that the alleged settlement made by the ward with her guardian after coming of age does not debar her from demanding from him payment of this sum. Under the circumstances, what is the appropriate remedy? This guardian, under a mistaken notion of the widow's right, paid the money over to her. As between him and his ward equity demands he should pay it to her; as between him and the widow, to whom it was paid, and who cannot in good conscience retain it, equity demands that she should pay it back to the guardian for investment under the order of the orphans' court. If in the administration of this minor's estate this guardian had conducted the business legally, what would have been the course of procedure? When the storm and fire placed the timber of his ward in peril, he would have presented his petition to the orphans' court, setting out the facts, suggesting the advisability of selling, and praying for an order to sell; the court would have made such order and further would have directed

him to retain in his hands two thirds of the purchase money, and invest the other third securely, so that the widow should receive the annual interest during her life, and at her death the principal should be paid to his ward. What ought to have been done must be done now, as nearly as it can be. It is admitted that the widow is solvent and possessed of ample estate; by mistake she has in her possession of her husband's estate money which she ought to pay back or secure to be paid back at her death. The money, then, is payable to her daughter, this appellant. Why should not the orphans' court in the proper administration of justice adjudicate in this proceeding the rights of the parties? This court has ample jurisdiction; the money in dispute is a fund realized from a sale of a part of the real estate of R. Mulholland, deceased; his widow and daughter both have an interest in it. In Brooke's Appeal, 102 Pa. 150, we decided that the orphans' court could award a citation upon the surety of a guardian who had the property of minor children in his possession, and compel him to surrender it or its proceeds. In Odd Fellows' Savings Bank's Appeal, 123 Pa. 356, it was held that the orphans' court could compel a bank to make restitution of certain stocks which it had obtained illegally from an estate.

That court having jurisdiction over the estates of decedents, it follows the funds of the estate because of its large equity powers; it need not call in the aid of a court of law.

It is but scant justice to this ward to intimate to her, when she has clearly established her claim to this $679.72, that she shall go into a court of law and sue her own mother to get it. Her legal demand for the "fish" cannot be thus satisfied with a "stone," in a court established for the protection of those who during infancy are unable to protect themselves.

We therefore are of the opinion the orphans' court should issue a citation to Mrs. Caroline Mulholland, widow of Rudolph Mulholland, deceased, to appear on a day certain, and show cause why an order should not be made upon her to pay over to John G. Uzzle, guardian, the sum of $679.72, money which as he alleges he paid to her out of the proceeds of her husband's land by mistake. If on appearance and hearing, the court should find the fact to be as averred by the guardian, then the court should order the investment of the money on good secu-

rity, the interest to be paid annually to the widow during her life, and at her death the principal to be paid to Martha A. Meeker, this appellant. Or the widow could be permitted to retain the money on giving proper security for the payment of the principal sum to her daughter at her death. But the decree of the orphans' court, striking from the auditor's statement of the account the item of surcharge, $679.72, is reversed, and the auditor's report is confirmed, with this modification, that on the said Caroline Mulholland repaying said sum or giving proper security therefor, then the guardian shall be credited with a like amount on the credit side of his account.

Appellant's thirteenth assignment of error is also sustained. This litigation is due solely to the guardian's negligent and irregular, though not dishonest, management of his ward's estate; there is no reason why she should bear any portion of the costs; that part of the decree which imposes upon her one half the costs is also reversed, and the suggestion of the auditor that all the costs be paid by the guardian is approved and adopted.

The assignments of error, in so far as they affect the decree of the court below as to this one item of $679.72, and the costs of audit, are sustained, and the decree reversed at the costs of the appellee. It is further ordered that the record be remitted to the orphans' court, that the case may be proceeded with in accordance with this opinion.