## Hober's Estate.

Argued April 30, 1935. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Albert F. Yunker,* for appellant.

*Harbaugh Miller,* with him *Donald Thompson* and *Stephen Emery,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

This record is not in very good shape, due to the fact that the case was set down for argument in the court below, by the petitioner, the appellant, on bill and answer, without taking any testimony or depositions. It follows that wherever the averments of the petition are denied in the answer, this court will accept as true the pertinent facts set forth in the answer: Welmet B. & L. Assn. v. Matchica, 310 Pa. 275, 165 A. 227; Hild v. Dunn, 310 Pa. 289, 165 A. 228; Brooks v. Coyle, 319 Pa. 80, 179 A. 81.

The petition and answer are not as full and complete as they might have been, and are lacking in many details that could have been supplied by testimony. As a consequence, the briefs of both appellant and appellee discuss some matters that are not contained in the petition and answer, none of which we can consider on this appeal, except, perhaps, where both parties have admitted that the statements are correct.

The relevant facts, thus limited, are as follows:

Andrew Hober died December 20, 1929, intestate, and letters of administration on his estate were duly issued to his widow, Rose Hober. His estate was considerably involved. The real estate was subject to certain mort-

gages and to debts not of record on which suits were brought within the statutory period to preserve their lien. The First National Bank of McKees Rocks held a mortgage for $10,600, and notes of the decedent for $6,352, on which it brought suit within one year and had the same duly noted in the judgment lien index.

The administratrix filed her first and partial account, which was duly audited and a decree of distribution duly entered on May 9, 1933, ordering the distribution of a balance of $1867.87, of which $1004.90 was awarded for attorney's fees, undertaker's costs and a preferred judgment, and the balance $862.97 was awarded to the general creditors, including $343.23 to the First National Bank of McKees Rocks on its notes for $6352.

This balance of $1867.87 was on deposit in the First National Bank of McKees Rocks in two accounts, one for $58.18 in the name of "Rose Hober, Administratrix of Estate of Andrew Hober, deceased," and the other for $1809.69 in the name of "Andrew Hober Estate, Rose Hober, Administratrix, Special."

On March 6, 1933, pursuant to a proclamation of the President of the United States, the First National Bank of McKees Rocks was closed and was not permitted to reopen by the Comptroller of the Currency, but was placed in the hands of T. W. Friend, as Conservator, until April 16, 1934, at which time the conservatorship was terminated and the assets of the bank and control of its affairs were returned, pursuant to the order of the Comptroller of the Currency, to the Board of Directors of the Bank for the sole purpose of transferring certain acceptable assets to The First National Bank at McKees Rocks, a newly organized national bank, and the remaining assets to John J. Thomas, James R. Davis and H. E. Millard, Liquidating Trustees. By vote of the holders of more than two-thirds of the outstanding stock of the First National Bank of McKees Rocks the

said banking association was placed in voluntary liquidation under the statutes of the United States, on August 2, 1934. On April 18, 1934 the First National Bank at McKees Rocks was opened for business and, in accordance with the statutes of the United States and the waivers of more than seventy-five per cent of the depositors of the First National Bank of McKees Rocks, fifty per cent of all deposits then in the respondent bank were paid in cash or credited to accounts of the depositors in the new bank, and the remaining fifty per cent held pending liquidation of the assets in the hands of the trustees.

The deposits in the name of "Rose Hober, Administratrix of Estate of Andrew Hober, deceased" and of "Andrew Hober Estate, Rose Hober, Administratrix, Special," amounting together to $1867.87, were, on September 20, 1933, pursuant to instructions from the Comptroller of the Currency, set off by the Conservator against the notes of Andrew Hober, held by the First National Bank of McKees Rocks, and a note of Rose Hober, Administratrix of Estate of Andrew Hober, deceased, for the sum of Andrew Hober's notes, which it was admitted on the argument the appellant had given the bank as additional security for said notes. Written notice of this set off was mailed appellant immediately after September 20, 1933. By reason of this set off, no money was turned over by the Conservator, or the old bank, to appellant or the First National Bank at McKees Rocks, the new bank, in settlement of fifty per cent of appellant's deposits in the old bank.

The prayer of the petitioner appellant was for a citation on the First National Bank of McKees Rocks,—the old bank—directing it to show cause why the account of Rose Hober, Administratrix of the Estate of Andrew Hober, deceased, in said bank, should not be released upon the same terms and conditions as other accounts on the books of said bank, as of April 18, 1934

—that is, fifty per cent thereof paid to her or to the new bank for her account. A citation was accordingly issued, and after answer, and argument of counsel, the petition was dismissed for want of jurisdiction in the court to make the order of payment prayed for. We agree with the court below.

While the appellant, as administratrix of her husband's estate, was a trustee of the funds of the estate coming into her possession, and her relation to those entitled to participate in said funds was a trust relation, the relation between her and the First National Bank of McKees Rocks, created by her deposit of the estate's funds in the bank, was that of creditor and debtor: Prudential Trust Company's Assignment, 223 Pa. 409, 413, 72 A. 798; Gartner v. Cassatt, 313 Pa. 491, 495, 169 A. 889. Money deposited in a bank ceases to be the money of the depositor and becomes the money of the banking institution in which deposited. The fact that appellant deposited trust funds to her credit as administratrix in the bank did not make the bank a trustee of those funds—but only a debtor to her for their amount. Hence a dispute between her and the bank as to the amount of that deposit, or to the right of the bank to apply the deposit to her note, given as security for the decedent's notes, did not invest the Orphans' Court with jurisdiction to determine the controversy and to order payment of the amount due, if any, to appellant. A dispute of that kind, between the administratrix and her debtor, is for the Common Pleas to settle, not the Orphans' Court. Suppose, for example, that the appellant held a life insurance policy payable to the estate of her decedent. Any dispute with the insurance company over its payment would have to be litigated in the common pleas and jurisdiction over it could not be assumed by the Orphans' Court, merely because the latter has jurisdiction over the appellant's accounts as administratrix. While an award was made

the bank as an unsecured creditor of the estate, it does not appear that the bank ever caused an appearance to be entered for it in the Orphans' Court, or was represented by an attorney in securing such award in said court. The record is barren on the subject. The award, for all that appears, was made on the motion of the administratrix and without any act or participation by the bank toward securing it.

All of the cases relied on by the appellant are distinguishable from this one. In some of them the Orphans' Court assumed jurisdiction over a specific chattel, chose in action or article of property, which admittedly belonged to the decedent at the time of his death, such as a certificate of stock,[1] a mortgage,[2] conveyance of land,[3] the recovery of a ward's money improperly paid by the guardian to his mother;[4] a threatened unlawful distribution of the trust fund.[5] Even here the Orphans' Court does not have jurisdiction if there is a real dispute as to the decedent's ownership of the article or property at the time of his death.[6] In another,[7] the proceeding was by attachment in execution, a *proceeding in the Common Pleas,* which while a writ of execution against the defendant in the judgment was in the nature of an action at law against the garnishee, and resulted in an adjudication by the *common pleas* fixing the garnishee's indebtedness to the defendant in the execution, prior to the garnishee's insolvency. But in that case the Supreme Court of the United States said: "We must not, however, be understood as holding

---

[1] Williams' Est., 236 Pa. 259, 84 A. 848; Marshall's Est., 138 Pa. 285, 22 A. 24; Odd Fellows Savings Bk., 123 Pa. 356, 16 A. 606.

[2] Gilkeson v. Thompson, 210 Pa. 355, 59 A. 1114.

[3] Tyson's Est., 191 Pa. 218, 43 A. 131.

[4] Mulholland's Est., 154 Pa. 491, 26 A. 612.

[5] Heinz's Est., 313 Pa. 6, 169 A. 365.

[6] Cutler's Est., 225 Pa. 167, 73 A. 1111; Williams' Est., supra p. 270.

[7] Earle v. Penna., 178 U. S. 449.

that the distribution of the bank's assets in the hands of the receiver could have been in anywise directly controlled by the state court or seized under an attachment or execution in the hands of any state officer. On the contrary, the direction in the statute that the receiver pay over all moneys realized by him from the assets of the bank to the Treasurer of the United States, subject to the order of the Comptroller, furnished a rule of conduct for him which neither an order of nor any proceedings in the state court could affect, modify or change. The scheme of the statute relating to suspended national banks is that from the time of a bank's suspension all its assets, of whatever kind, as they are at the time of suspension, pass in the first instance, to the receiver, the proceeds thereof to be distributed by the Comptroller among those whose claims are proved to his satisfaction or are adjudicated by some court of competent jurisdiction. So when the Chestnut Street National Bank suspended and went into the hands of a receiver the entire control and administration of its assets were committed to the receiver and the Comptroller, subject, however, to any rights of priority previously acquired by the plaintiff through the proceedings in the suit against Long. It results that the state court did not err in overruling the motion of the receiver to vacate and dismiss the attachment issued in the suit brought against Long and served upon the bank as garnishee prior to its suspension ...... But we are of opinion that the order of judgment of May 21, 1898, was erroneous in some particulars. As the bank did not cease to exist as a corporation upon its suspension and the appointment of a receiver, it was competent for the state court [that is, the common pleas] to determine, as between the plaintiff in the attachment and the bank, what rights were acquired by the former as against the latter by the service of the attachment; and its judgment, thus restricted, could have been brought to the

attention of the Comptroller for his guidance in distributing the assets of the bank. To this extent the judgment below is affirmed. But, for the reasons already stated, we hold that the state court had no authority to order execution in favor of the plaintiff of any dividends upon the money on deposit in the bank to Long's credit at the time the bank was served with the attachment, and direct the sale of the shares of stock originally held by the bank as collateral security, but which passed upon the suspension of the bank to the custody of the receiver. This part of the judgment should be set aside. It is proper to say that the rights acquired by the defendant in error under the garnishee proceedings can be made effective upon application to the Comptroller, to whom Congress has entrusted the power to distribute the assets of a suspended bank among those entitled thereto."

A conservator, appointed under the Act of Congress of March 9, 1933, 48 Stat. c. 1, Title II, par. 203, U. S. Code Title 12, sec. 203, is a receiver, with limited jurisdiction, subject to the control of the Comptroller of the Currency: Com. v. U. S. F. & G. Co. 314 Pa. 140, 145, 170 A. 686.

A somewhat similar case came before the Supreme Court of this State in Appeal of Harrisburg National Bank, 84 Pa. 380. There, a man named Roberts took out a policy of life insurance payable to his estate and assigned it to Dougherty Bros. & Co., a creditor. The assignment while absolute on its face was, actually, only as collateral security for a debt of some $2000. The insurance company, on the death of Roberts, paid the full proceeds of the policy to Dougherty Bros. & Co., who thus received $7251.78 more than their debt. Roberts' administrator claimed this money, but the guardian of Roberts' children also claimed the fund for them, residing in New York. The parties agreed that the fund should be paid into the Harrisburg National Bank to

be held on their joint credit, and that Judge PEARSON should be asked to approve a compromise dividing it between them equally, or if unwilling to do so, he should then decide to which of the parties the fund belonged. Judge PEARSON declined to act as arbitrator. A petition was presented to the Court of Common Pleas of Dauphin County, sitting in equity, which was dismissed for lack of jurisdiction. The administrator then filed his account but did not charge himself with the fund in bank; but he called the court's attention to the fund and asked it to determine whether it belonged to the administrator or the guardian of the children. An auditor was appointed to pass on exceptions to the account, who sent a notice of the meeting to the guardian of the children, who returned it with the endorsement that he refused to receive or recognize it in any way. The auditor recommended a decree surcharging the administrator with the fund, $7251.78, and that the Harrisburg National Bank be ordered to pay the said sum into the Orphans' Court to be distributed by the court among the parties entitled thereto; and it was so ordered, the decree declaring that upon such payment the bank should be discharged of all liability to the guardian of the children. The bank appealed. The Supreme Court, speaking through Mr. Justice SHARS-WOOD, said, inter alia [italics ours]: "The agreement of compromise and reference having failed of effect, the appellants are liable to pay this money to whoever is in law entitled to receive it. It may be very clear that under the laws of Pennsylvania this fund belongs to the administrator. *If so, it is simply a debt due to the estate.* But what Act of Assembly has given the Orphans' Court jurisdiction to determine that question, and order the debtor to pay the administrator or to pay into court—an order, of course, to be enforced by attachment or execution? The foreign guardian could not be brought in as a party by a simple notice, and the

rights of the minor children be concluded by a decree against him. As a foreign guardian he had no power in this state; but a guardian may hereafter be appointed here, who would have. What power then had the court to decree that upon payment into court the bank should 'be discharged from all further liability to Samuel A. Foot, guardian, or to any other claimant of the same or any part thereof?' *Even if the claimant of the fund had been a resident of Dauphin County, he could not have been made a party to this proceeding and his claim disposed of in this summary way. He would have had a right to a common-law action and to a trial by jury.* On what grounds the claim is made on behalf of the minor children we do not know. It would be dangerous, without hearing their side, to come to the conclusion that it is without foundation ...... It may be readily conceded, as the learned auditor below argued, that the Orphans' Court has all the power of a court of equity in regard to matters clearly within its jurisdiction. But the question recurs, was this a matter clearly within its jurisdiction? In the settlement of the administrator's account, they certainly could decide that this was an asset of the estate which the administrator ought to have collected, and if he had negligently lost it, could surcharge him with the amount. *But surely they could not cite the debtor and enter a decree or judgment against him.* That would be to draw into that court the trial and determination of all claims by decedent's estates against third persons. It would hardly be pretended that, if the money had remained in the hands of the assignees who held the policy as a pledge, that such an order could have been made upon them. It is not perceived that the appellants stand in any other or worse position. They were in no sense parties to the proceeding in the court below. They did not, in answer to the notice they received from the auditor, appear before him. When notified of his finding against them

they came in and excepted. This they had a right to do, to prevent an unwarrantable proceeding against them; but it did not involve them in a submission to the jurisdiction, for it was for the very purpose of taking exception to that jurisdiction." See also, Schnepf's Est., 48 Pa. Superior Ct. 580; Szovak's Est., 51 Pa. Superior Ct. 7; Cutter's Est., 286 Pa. 505, 134 A. 489; Walkinshaw's Est., 275 Pa. 121, 118 A. 766; Pestcoe v. Sixth Nat. Bk., 112 Pa. Superior Ct. 373, 171 A. 302.

We are not to be understood as passing on the validity of the Comptroller's action in setting off the deposit in the old bank, at the time it closed, against the appellant's collateral note held by the bank at that time. We have no more jurisdictional authority to do that in this proceeding than the orphans' court had. We only hold that in the circumstances here present, as they appear in this record, modified by the admissions of the parties at oral argument, the Comptroller of the Currency having claimed that right and acted in accordance therewith by applying the deposits standing to appellant's credit to the note which she gave the bank, the orphans' court had no jurisdiction to pass on the legality of that action and order it to be rescinded; and could not make any order on the bank to pay over any of its funds to the appellant: Ake & Feay's App., 74 Pa. 116, 120.

The decree is affirmed at the costs of the appellant.