## Brusstar's Estate.

46

Argued March 16, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Elston C. Cole,* with him *Ira P. Rothermel,* for appellant.

*Charles W. Matten,* with him *Harry R. Matten,* for appellee.

OPINION BY BALDRIGE, J., July 10, 1936:

These two appeals are from the order of the orphans' court of Berks County dismissing exceptions to the account of the executor in the estate of William deB. Brusstar.

The first appeal, No. 84, October Term, 1936, was taken before, and the second appeal, No. 85, October Term, 1935, after, the schedule of distribution was filed and the adjudication confirmed absolutely. The first appeal was premature and is consequently dismissed: *Levy's Est.,* 307 Pa. 522, 161 A. 740. The questions raised in the latter will be duly considered.

On April 9, 1931, William deB. Brusstar, died, testate, leaving to survive him his wife, Virginia H. Brusstar. Letters testamentary were granted to the Reading National Bank & Trust Company (hereinafter designated the bank). The deceased directed in his will that all his debts, including a note for $6,000 held by his wife, be paid as soon after his death as could conveniently be done, and gave the income from his net estate to his wife during her natural life, and the remainder over to various collateral heirs enumerated therein.

On March 16, 1933, the bank was closed, and shortly thereafter a conservator was appointed, who is engaged in liquidating its business.

On March 14, 1933, the widow died, testate, and letters testamentary were duly granted to Lorena R. Fry.

On September 30, 1933, the conservator of the bank filed the executor's first and partial account in this estate. At the audit of the account, the widow's execu-

trix presented for payment the $6,000 note, with interest. The accountant and the remaindermen opposed payment of the note in full, claiming certain credits thereon. The auditing judge found that the note was subject to credits of $2,242.31, paid to the life tenant in excess of the amount due her as income; $900, the appraised value of the decedent's automobile sold by the executor to the widow for that sum; $900, on account of inheritance taxes paid by the executor on the life estate; and $497.59, commissions alleged to be due the accountant. Interest was allowed on the claim of $6,000 and on the overpayments made to the widow. Exceptions were filed to this adjudication, which were overruled, and the widow's executrix appealed.

The appellant denies the jurisdiction of the orphans' court to determine the question of set-offs claimed. That objection was not raised below, but it is never too late to attack the court's jurisdiction over the subject-matter involved: *Bluestone v. DeRoy et al.,* 298 Pa. 267, 271, 148 A. 110; *Wolfe et al. v. Lewisburg T. & S. D. Co.,* 305 Pa. 583, 588, 158 A. 567; *Com. ex rel. Mees v. Mathieu, II,* 107 Pa. Superior Ct. 261, 163 A. 109. That the orphans' court is a tribunal of limited jurisdiction and has no general equity powers has been ruled many times: *Ake & Feay's App.,* 74 Pa. 116, 119; *Estate of Lena Hartzell,* 114 Pa. Superior Ct. 190, 192, 173 A. 842. The orphans' court has, however, exclusive jurisdiction over all things pertaining to the settlement and distribution of estates: *Long's Est.,* 254 Pa. 370, 98 A. 1066. In our opinion, the matters before us in dispute come within its authorized powers.

If a debtor and a creditor relationship had existed between the life tenant and the bank, there would be much force to the appellant's contention. But we are dealing with the bank as a fiduciary and in no other capacity. The exact source of the money paid in excess of the net income does not clearly appear of record.

The only evidence relating thereto is the account itself. We think, however, that the learned court below was justified in stating: "The overpayments were made with moneys advanced by the accountant to the estate. They were made by the estate or the fiduciary and not the bank." We, therefore, have a holder of a promissory note presenting it for payment from the balance in an executor's account which was being adjudicated by the orphans' court. The original amount thereof is not in dispute, but the accountant asks for credit on the note for moneys paid to or in behalf of the holder of the note after the death of decedent.

The orphans' court, in these circumstances, had authority to determine whether the note should be paid in full, or whether it was subject to the set-offs claimed, and, if so, the amount thereof, etc.

This case differs from the *Estate of J. A. Nauman*, 110 Pa. Superior Ct. 55, 167 A. 395, as there the payments voluntarily made by the trust company were taken from a "trust fund account," which comprised money received from other estates. Those voluntary payments, therefore, created a relationship of creditor and debtor between the trust company and the life tenant. In *Hunter, Reveiver, v. Henning,* 259 Pa. 347, 103 A. 61, the receiver of a bank brought an action against the maker of promissory notes held by the bank. The defendant sought to set off a deposit made by him in a fiduciary capacity prior to the insolvency of the bank. It will be observed in that case there was a want of mutuality of rights and identity of the parties.

It is not disputed that the life tenant actually received from the accountant certain moneys in excess of the net income. Therefore, cross demands between two parties existed, each of whom had a corresponding right and the same legal remedy against the other. The essential set-off requirements of mutuality of demand, both as regards the quality of the right and the

identity of the parties, are present: *Stuart v. Com.,* 8 Watts 74; *Hunter, Receiver, v. Henning,* supra. It is true that in the account it appeared that the payments made to the life tenant were from income, and, admittedly, no notice was given that any of them were on account of the note, but neither the widow nor her estate sustained any loss, nor was she in any way prejudiced, thereby. There was no overpayment in the sense that the money paid was not actually due her.

We find no merit to the first six assignments of error complaining of the credit of $2,242.31 on the note.

The seventh and eighth assignments of error relate to the credit allowed for the purchase price of the automobile. Two witnesses testified that Mrs. Brusstar agreed to buy the car for $900, and the court found that this arrangement was concluded on May 22, 1931, and that she had possession and use of the car thereafter. The account shows on that date a credit of $14.40 covering the cost of transfer of, and new tags for, the automobile. This credit was properly allowed.

Nor is there any dispute in regard to the payment of tax on the life estate, which is embraced in the ninth assignment of error. The accountant erroneously credited it against the personal estate's principal account, when it should have properly been charged to the income account, thus increasing the overpayment of income to the life tenant. That was a matter within the power of the orphans' court to adjust in the settlement and distribution of the estate, and that was accordingly done. We find no just reason to criticise this item of credit.

The exception to the credit of $497.59 as commission allowed by the orphans' court on the income account is well taken, as the executor did not have authority to set off accrued commissions against the note owing to the widow's estate. That was an attempt to set off a debt, due from the decedent's estate to his executor for

services, against the claim of the widow's estate, which was not liable therefor: *Wentz's Est.*, 225 Pa. 566, 74 A. 424; *Hunter, Receiver, v. Henning,* supra. Obviously, there was an absence of mutuality. The executor certainly could not sue the widow's executrix for commissions due him from her husband's estate. This claim should have been disallowed. The tenth assignment is, therefore, sustained.

The decree of the learned court below is affirmed, except as to the allowance on the appellant's note of the credit of $497.59, executor's commissions. Distribution is to be made accordingly; appellant and appellees each to pay one-half the costs of this appeal.