## Jones' Estate

*Russell O'Malley* and *Gomer W. Morgan* for accountant.

*Edward J. Kelley, William P. Farrell* and *Ellis Berger*, for Secretary of Banking, claimant.

SANDO, P. J., February 4, 1937.—The Miners Savings Bank and Trust Company of Olyphant, Pa., was closed on September 29, 1931, and was taken possession of by the Secretary of Banking as receiver. Decedent died November 15, 1931, and at the time of his death was the owner of 44 shares of the capital stock of the bank, each having the par value of $50 per share.

Prior to its closing the bank had been operating under the provisions of the Banking Act of May 13, 1876, P. L.

161, as far as the liability of the shareholders was concerned, as provided by section 5 of the act.

At the time the bank closed, the procedure for the enforcement of the individual liability of stockholders was set forth in section 37 of The Banking Act of June 15, 1923, P. L. 809, 826, which section provided that whenever the Secretary of Banking should determine that an assessment of the shareholders was necessary and should determine to enforce the liability, he should give notice to the stockholders demanding payment at a fixed time not less than 30 days from the demand, and further provided the procedure if any stockholder should fail or refuse to pay the assessment within the time limit.

The Secretary of Banking, having determined that a valuation of the uncollected assets in his hands was insufficient to pay in full its debts to depositors and creditors and to enforce liability, levied an assessment on the stockholders. This assessment was for $350,000, the par value of all the stock and the full liability, which assessment was made February 21, 1936, and was due and payable on or before April 4, 1936.

Between the date of the closing of the bank and the decision of the secretary to enforce the liability of the stockholders, the legislature passed the Department of Banking Code of May 15, 1933, P. L. 565. In the instant case the secretary has proceeded under section 723 of the code, which made some procedural changes, and provides, inter alia:

"If any shareholders shall not pay the amount assessed against them, the secretary may institute actions at law or in equity against them, either severally or jointly, for the amount of such assessment, together with interest from the date designated in the notice from the secretary, for the payment of such assessment."

It is contended on behalf of accountant that this court has no jurisdiction over this claim, as it is not a court of general jurisdiction but a creature of statute, and that the

secretary, having been given a statutory remedy of an action at law or in equity against the stockholders, is confined to the court of common pleas, sitting in law or equity.

The jurisdiction of the orphans' court, a statutory court, is limited by the terms of the statutes. Section 1 of the Act of March 27, 1713, 1 Sm. L. 81, denominated the orphans' court "a Court of Record"; section 2 of the Act of March 29, 1832, P. L. 190, declared the orphans' court to be a court of record with all the qualities and incidents of a court of record at common law; and the Act of June 7, 1917, P. L. 363, sec. 1, provides that in every county of the Commonwealth there shall continue to exist, as heretofore, a court of record (the orphans' court).

"It is a clear principle in the construction of statutes, that the jurisdiction of a court of record cannot be taken away, but by express negative words": Kline v. Wood, 9 S. & R. 294, 298.

As to the import of the phrase "actions at law", in Bouvier's Law Dictionary "action" is defined in practice as: ". . . formal demand of one's rights from another person, made and insisted on in a court of justice." In Bartley's Estate, 20 Pa. C. C. 451, 452, action is held to be: ". . . a word whose generally accepted meaning seems to be identical with its technical significance, to wit, a proceeding in a court, whether of equity or law". In this case Judge Ashman says: "A proceeding in the orphans' court is therefore undoubtedly an action". In Jacoby v. Shafer, 105 Pa. 610, an action is said to include "all the formal proceedings prescribed by law for adjudicating and enforcing a right, or denying an unfounded claim or demand."

In Painter v. Henderson, 7 Pa. 48, the orphans' court is said to be a court of record at common law, as declared by the statute, and in Brinker v. Brinker, 7 Pa. 53, 55, Mr. Chief Justice Gibson says:

"But although the Orphans' Court has been called a court of equity, in respect to the few subjects within its

jurisdiction, the ancillary powers of such a court have not been given to it. It is a special tribunal for specific cases; and its resemblance to a court of equity consists in its practice of proceeding by petition and answer".

The foregoing principles have been followed in cases down to Brusstar's Estate, 123 Pa. Superior Ct. 45, where it is said "That the orphans' court is a tribunal of limited jurisdiction and has no general equity powers", but has "exclusive jurisdiction over all things pertaining to the settlement and distribution of estates".

We conclude, therefore, from the statutes and cases that the orphans' court, though a creature of statute, is a common-law court of record, but proceeding on equity principles and according to equity practice in matters within the limits of its jurisdiction.

Accountant contends that the statement of the secretary as to the condition of the bank and the necessity of the assessment, being only prima facie, is subject to rebuttal, and this would involve general trial, and that on these matters the orphans' court has no jurisdiction to hold such general trial: Mulligan's Estate, 274 Pa. 398; Fulton's Estate, 200 Pa. 545; Miller v. Fulton, 206 Pa. 595.

In Bumm's Estate, 8 Dist. R. 191, decided in 1899, Hanna, P. J., reviewed the authorities and held that a claim presented in the orphans' court by the receiver of an insolvent bank, supported only by the testimony of the receiver, was not sufficient to charge the estate, since the amount of the liability must be judicially determined in a different proceeding, but that a sum sufficient to satisfy such liability would be set aside to await such proceeding.

Prior to 1919, the practice was for receivers of insolvent banks to petition the court for a judicial determination as to the necessity and amount of an assessment on stockholders. The Act of May 21, 1919, P. L. 209, sec. 27, gave the Commissioner of Banking power to make this determination, and The Banking Act of 1923 and the Bank-

ing Code of 1933 continued this power in the Secretary of Banking, making it unnecessary judicially to determine the necessity and amount of assessments.

In Gordon, Secretary of Banking, v. Corbett, 22 D. & C. 141, it was held that, in an action by the Secretary of Banking in possession of an insolvent institution to enforce defendant's liability as stockholder, a statement of claim is insufficient to justify the entry of judgment if it fails to set forth facts showing that the amount of the assessment made, applied to the total outstanding stock, is necessary to pay the obligations of the institution.

In Gordon, Secretary of Banking, v. Kratzer, 22 D. & C. 615, it was held that the liquidator of an insolvent bank may institute action against its shareholders to enforce their individual statutory liability for its debts whenever it reasonably appears to him that the institution assets, even though he has not as yet exhausted all of them, are not sufficient to meet its liabilities; the judicial determination of the necessity for such action required under the law existing prior to the passage of the Act of 1919, supra, is no longer necessary.

In Gordon, Secretary of Banking, v. Corbett, supra, 143, Judge Fox says:

"The right of the secretary to levy the assessment up to the full par value of the defendant's stock is not absolute; he can levy only so much as may be necessary to pay the creditors. There should be sufficient facts alleged in the statement to show not only the necessity for an assessment but how much money is necessary to cover the situation."

On behalf of accountant it is contended that the Banking Act of 1876, supra, entitled "An Act For the incorporation and regulation of banks", which provides, in section 5, that the stockholders were liable for the debts of the bank in proportion to the amount of their stock at par, is unconstitutional, as it violates article III, sec. 3, of the Constitution of Pennsylvania, which reads:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

In Boocks' Petition, 303 Pa. 363, it was held that in determining whether the title of an act sufficiently indicates its contents, the Constitution presupposes a reasonably inquiring state of mind, and such a state of mind would cause the reader to follow the trail, indicated by the main part of the title, into the body of the act.

In Scaife v. McKee et al., 298 Pa. 33, 41, it was stated that " 'the Constitution does not require the title of a statute to be an index of its contents' ". In Allegheny County Home's Case, 77 Pa. 77, it was held that all that is required is that the title fairly give notice of the subject of the act, so as reasonably to lead to an inquiry into its body.

We conclude, therefore, that the title of the act fairly gives notice and that the act is constitutional.

The General Corporation Act of April 29, 1874, P. L. 73, permitted the formation of trust companies without providing for double liability of the stockholders. Accountant contends that the Banking Act of 1876, which provided for the incorporation and regulation of banks, is unconstitutional because it makes an arbitrary and unreasonable classification, inasmuch as corporations formed under the act are subject to double liability of the stockholders.

When the General Corporation Act was enacted in 1874, the provisions for the formation of trust companies gave them no general banking powers. Supplemental legislation has made the powers available to trust companies. In 1933 they were authorized to discount notes.

In Gordon, Secretary of Banking, v. Winneberger, 310 Pa. 362, it was held that the exercise of these additional powers did not make the stockholders subject to double liability. The Banking Act of 1876 gave general banking powers to corporations organized under its provisions. While the supplemental legislation to the General Cor-

poration Law of 1874 gave additional powers to corporations organized thereunder, yet the corporations formed under separate acts were easily distinguished.

The Secretary of Banking proceeded under the Department of Banking Code of 1933. Accountant contends that this is in violation of article I, sec. 17, of the Constitution, prohibiting the passage of any ex post facto law impairing the obligation of contracts, claiming that the estate's rights were fixed in 1931, when the bank was closed, and that the secretary should have proceeded according to the Department of Banking Code of 1923.

The Department of Banking Code of 1933 does not impair the rights of the estate. It merely changes the procedure. It is settled law that it is within the power of the legislature to pass retrospective laws which affect suits pending, give new remedies, extend existing remedies or remove impediments in the way of legal proceedings. For cases in point, see Purdon's Constitution of Pa. 164, note 9.

And now, February 4, 1937, it is ordered and decreed that a sum sufficient to meet such possible liability of the estate will be directed to be set aside to await further proceedings.