## McHenry Estate

Before Sinkler, Acting P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Joseph P. Devine,* for substituted trustee.

*Charles C. Townsend* of *Townsend, Elliott & Munson* and *Roland C. Heisler* for objecting saving fund societies.

LADNER, J., October 29, 1948.—From the record in this case it appears that John McHenry, testator, died June 8, 1941, and by his will appointed as executors and trustees of his estate Mary McHenry, his widow (now 86 years old); John D. McHenry, his son, and Mary E. McHenry, a daughter. On petition of John D. McHenry, one of the cotrustees and an income beneficiary, and pursuant to proceedings thereon, this court (per Sinkler, J.) entered a decree dated February 15, 1947, permitting petitioner to resign as cotrustee and removing from office the other two trustees, appointing the Market Street National Bank of Philadelphia as substituted trustee and directing an account to be filed. Said decree was unappealed from.

An account was duly filed and by adjudication of Bolger, J., dated April 29, 1948, and thereafter confirmed absolutely, the balance, composed as set forth in the account, was awarded to said substituted trustee.

By the account it appears that the greater part of the trust funds were deposited in the saving funds accounts in the names of the former executors and trustees, as follows: $36,665.59 in the Western Saving Fund Society (account no. 375215); $75,815.08 in the Beneficial Saving Fund Society (account no. 29832); $21,-708.25 in the Philadelphia Saving Fund Society (account no. 450433). In the adjudication of Judge Bolger, it is set forth "that the account shows that the balance of principal of the personal estate consists for most part of cash on deposit in the saving fund accounts in various banks. At the audit, counsel suggested that these various saving fund societies be authorized and directed by adjudication to transfer the funds belonging to this estate to the substituted trustee. It is so ordered and a certified copy of this adjudication upon each of said banks should be sufficient for the purpose."

The Beneficial Saving Fund Society, upon receipt of a certified copy of the adjudication, transferred the trust account to the name of the new trustee, but the other two societies, though not pretending any claim to the deposits, refused. Whereupon, petition was filed by the Market Street National Bank, substituted trustee, upon which a citation was awarded against the Western Saving Fund Society and the Philadelphia Saving Fund Society to show cause why they should not pay over to petitioner the moneys belonging to the trust on deposit in the above-named accounts.

To this petition both saving fund societies filed preliminary objections in which they seek to question the jurisdiction of this court by pleading a rule of their own which requires presentation of deposit books before withdrawals and aver failure of the substituted trustee to present such book.

The objections are badly pleaded. It has been settled that the preliminary objections, like the speaking de-

murrer of old, must not plead facts, and when they do, such facts must be disregarded: Shaffer et al. v. Shaffer et al., 354 Pa. 517; Pew v. Minor, 216 Pa. 343.

We might well rest our dismissal of the objections on this ground alone, but if we do, respondents have the right to answer over and will no doubt raise the same question by answer. The beneficiaries of this trust have already too long been denied adequate income from a considerable portion of the trust estate by the stubbornness of the aged trustee, now removed, and we are not inclined to permit dilatory tactics to add to that delay. We are all of the opinion that the objection to our jurisdiction, based on the failure of the substituted trustee to produce the passbook which the former trustee refused to surrender, is utterly without merit, and therefore proceed to a consideration of the question sought to be raised.

With the number of decisions on this question in the books, it is surprising that the savings banks should contend that this court lacks jurisdiction to recover trust property withheld from a fiduciary subject to its control. As far back as Appeal of the Odd Fellows Savings Bank, 123 Pa. 356 (1888), the jurisdiction of this court was clearly settled. In that case an executor for his individual debt pledged with a bank stock known by the bank to belong to his decedent's estate. The executor was removed. When petition was filed in the orphans' court to recover the stock certificate, the bank demurred to the jurisdiction of the court. In upholding the orphans' court jurisdiction, the Supreme Court held the court had jurisdiction over the property for the reason that it belonged to decedent's estate and that, its jurisdiction having attached, its chancery powers were sufficient to embrace every relief necessary for full disposition of the case and that "when a cause is once within the grasp of a court of equity, or a court lawfully exercising equity

powers, it has no need to call in the aid of a court of law. Its process is plastic, and its power is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules. In such a case it needs no other court to finish its work." Quoted and followed in Heinz' Estate, 313 Pa. 6, 10, and in Carney v. Merchants' Union Trust Company, 252 Pa. 381, 386.

Of course where there is a dispute concerning *title* to assets claimed, the jurisdiction of this court would be ousted, but even then we have the preliminary jurisdiction to determine whether the dispute is substantial and where the proofs show that if the case were before a jury, binding instructions would be justified, then the question may be settled here without an award of an issue to common pleas: Brown's Estate, 343 Pa. 230, 236; Welch's Estate, 32 D. & C. 231; or a jury trial here: Moyer's Estate, 341 Pa. 402, 413.

In the case before us there is not only no substantial dispute of title but no dispute at all, for we do not understand that the savings banks here claim any title in themselves. The owner's title does not depend upon the production of the books where title can be otherwise established. Nor does the fact that a savings deposit, like any other bank deposit, establishes a debtor-creditor relation between the bank and depositor alter the situation.

The correct governing principle is well stated in 9 C. J. S. 1411, §986, to be:

"Although the by-laws of a savings bank by which a depositor agreed to be bound, required the production of the original bank book before any person should receive any part of the deposit, the depositor's title to the deposit is not, as a matter of law, conditional on possession of the passbook, and a conversion of it

by another does not deprive him of his right to the credit represented thereby".

And, we might add, any more than the transfer of a stock certificate without the written transfer required by a corporation bylaw prevents the transfer of title by other means: Citizens Natl. Bank v. Irwin B. & L. Assn., 316 Pa. 536.

Similar in principle also is Hegerman's Estate, 28 Dist. R. 384 (1919) where we held this court had jurisdiction to order a corporation to issue a new certificate of stock in accordance with the Stock Transfer Act where a fiduciary accountable to this court showed title to the stock in the fiduciary's estate, and the loss or destruction of the certificate made distribution without a new certificate impossible. See also McCabe v. Union Dime Sav. Bank, 268 N. Y. S. 449, 150 N. Y. Misc. 157, where the right of a receiver, appointed at the instance of a judgment creditor, to a deposit of a debtor was contested because defendant bank's rule required the production of the passbook. The court said: "A depositor may assign his deposit for a valuable consideration without the delivery of the passbook, and, if such assignment is valid, the bank must recognize it, notwithstanding the failure of the transferee to produce the passbook": Angsbury v. Shurtleff, 114 App. Div. (N. Y.) 626, 99 N. Y. S. 989, aff. 190 N. Y. 507, 83 N. E. 1122.

Finally—and much in point—is the recent case of Schweityer Estate, 49 Dauph. 286, where Judge Richards held that where a deposit stood in the name of a decedent, his executor was on petition to the orphans' court entitled to the fund irrespective of his ability to produce the deposit book, and that the bank in such a case could not be liable to any third person claiming the fund in absence of notice of any gift or assignment: Phillips' Estate, 205 Pa. 515.

The cases cited by counsel for the savings banks in their brief, viz., Hober's Estate, 118 Pa. Superior Ct. 209, Appeal of the Harrisburg National Bank, 84 Pa. 380, and Ake and Feay's Appeal, 74 Pa. 116, are entirely inapposite. The first case was one where the bank was in the hands of a conservator appointed by the Comptroller of the Currency who claimed title to the deposit demanded by the fiduciary by virtue of a set-off on notes due by fiduciary's decedent. Obviously that is a case of substantial dispute of title which ousts the jurisdiction of the orphans' court. The second case also was one in which there was a substantial issue of title as well as lack of jurisdiction over a nonresident guardian not served with process. The third case is a case of specific performance of a decedent's contract for sale of real estate and in which the court held that under the Decedents' Estate Law of 1884 there was no jurisdiction in the orphans' court on petition for specific performance to enter a judgment in favor of the vendee for the amount by which the purchase money was overpaid.

We do not understand what respondent banks here would have us do in order that our substituted trustee may obtain the trust funds. Must we order this aged, former trustee to deliver up these deposit books or be committed to jail? We see no point in sending to prison an 86-year-old woman who might even then persist in her stubborn refusal. We prefer the more direct means of ordering the banks to transfer these deposits to the substituted trustee in whom title has been declared by the award of the auditing judge. For certainly the banks cannot be permitted to acquire title to the trust deposits by the unreasonable construction that their counsel puts on the bank rules. Moreover, at the argument, counsel for the banks admitted that their boards of directors possess ample power to waive the requirement of production of pass-

book now insisted on. Why such a simple solution of the situation was not adopted is most mystifying to this court.

Having thus declared our views on the question sought to be raised, we now give respondent banks the further opportunity to recede from their untenable position and to recognize the title of the substituted trustee without further quibble.

Accordingly, we now dismiss the preliminary objections, with no other order in the premises. If, however, respondents, notwithstanding what we have said, still desire to contest the substituted trustee's right further, leave is granted to answer over within 10 days as required by Equity Rule 49. If no answer is filed, a final decree directing transfer of the deposits in question to the name of the substituted trustee in form agreed to by both counsel will be entered.